**SENECA CONSTITUTIONAL RIGHTS ORGANIZATION, by Charles Williams, President, et al., Plaintiffs,**

v.

**James E. GEORGE, Jr., President of Seneca Nation of Indians, et al., Defendants.**

**Civ. No. 1972-152.**

United States District Court,
W. D. New York.

May 25, 1972.

Omar Z. Ghobashy, New York City, for plaintiffs.

Fried, Frank, Harris, Shriver & Kampelman, Washington, D. C., (Arthur Lazarus, Jr., Washington, D. C., of counsel), for defendants James E. George, Jr., Barry Snyder, Phoebe Crouse, Robert Hoag and Wayne Abrams.

Hodgson, Russ, Andrews, Woods & Goodyear, Buffalo, N. Y., (Stephen H. Kelly, Buffalo, N. Y., of counsel), for defendant Fisher-Price Toys, Inc.

CURTIN, District Judge.

Plaintiffs have filed a complaint and an amended complaint invoking this court's jurisdiction pursuant to 28 U.S. C. § 1343 and seeking relief for violations of 42 U.S.C. §§ 1981 to 1987 and 25 U.S.C. § 1302(5) and (8). The complaint seeks declaratory and injunctive relief and monetary damages against named individuals who are officials of the Seneca Nation of Indians and against a corporation which is negotiating with the Seneca Nation to locate a factory in an industrial park to be developed by the Nation on its Cattaraugus Reservation. Pending at present is plaintiffs' application for a preliminary injunction. For purposes of the application, all statements contained in affidavits submitted on behalf of plaintiffs are taken to be true.

Turning first to the question whether the court has jurisdiction of the action, counsel for the individual Indian defendants contends that the action is in essence one to prevent the Seneca Nation, through the Seneca Council, from entering into an agreement with the corporate defendant and from effectuating the agreement and that the action is consequently barred by tribal immunity from suit. *See* paras. Eighth, Fourteenth, Fifteenth and Sixteenth of the complaint. This contention, if sustained, would bar the action only insofar as the relief sought is declaratory or injunctive in nature. To the extent that damages are sought against individuals, the suit cannot be barred by tribal immunity from suit. *See* Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949).

Indian tribes enjoy a quasi-sovereign immunity which exempts them from suit without the consent of Congress. United States v. United States F. & G. Co., 309 U.S. 506, 512, 60 S.Ct.

653, 84 L.Ed. 894 (1940); Groundhog v. Keeler, 442 F.2d 674, 678 (10th Cir. 1971); Twin Cities Chippewa Tribal Council v. Minnesota Chippewa Tribe, 370 F.2d 529, 532 (8th Cir. 1967); Maryland Cas. Co. v. Citizens Nat. Bank of West Hollywood, 361 F.2d 517, 520 (5th Cir. 1966). The immunity may not be evaded by suing tribal officers or the United States as trustee or guardian of the tribe. Barnes v. United States, 205 F.Supp. 97, 100 (D.Mont.1962); Adams v. Murphy, 165 F. 304 (8th Cir. 1908); Haile v. Saunooke, 246 F.2d 293, 298 (4th Cir. 1957).

The question arises whether any of the statutory provisions upon which plaintiffs purportedly rely contains a congressional waiver of the immunity of Indian tribes and consent to suit against the tribes.

■ The court has been directed to nothing, and has found nothing, in the language of 42 U.S.C. §§ 1981 to 1987 or in the cases thereunder which indicates that by enacting the provisions Congress intended to strip Indian tribes of their quasi-sovereign immunity and to consent to suits against the tribes. It therefore holds that Indian tribes are immune to suits alleging violations of these sections.

Turning to the question whether enactment of the so-called Indian Civil Rights Act, 25 U.S.C. § 1301 et seq., reflects congressional consent to suits against Indian tribes, the statute provides that "[n]o Indian tribe[s] in exercising powers of self-government shall" violate any of ten enumerated guarantees corresponding to provisions of the United States Constitution. 25 U.S.C. § 1302. An "Indian tribe" is defined as "any tribe, band, or other group of Indians subject to the jurisdiction of the United States and recognized as possessing powers of self-government." 25 U.S.C. § 1301(1).

■ Although 25 U.S.C. § 1302 is addressed to actions by Indian tribes, counsel for the defendant Indians has argued that enactment of the provision did not by implication waive the quasi-sovereign immunity of Indian tribes and give the federal courts jurisdiction in actions against tribes alleging violations of 25 U.S.C. § 1302. Case law has rejected this position. See Solomon v. LaRose, 335 F.Supp. 715 (D.Neb.1971); Loncassion v. Leekity, 334 F.Supp. 370 (D.N.M.1971); Spotted Eagle v. Blackfeet Tribe of Blackfeet Indian Res., 301 F.Supp. 85 (D.Mont.1969); Dodge v. Nakai, 298 F.Supp. 17 (D.Ariz.1968). See also Note, The Indian Bill of Rights and the Constitutional Status of Tribal Governments, 82 Harv.L.Rev. 1343, 1372–73 (1969). Any dictum implying the contrary in Pinnow v. Shoshone Tribal Council, 314 F.Supp. 1157 (D. Wyo.1970), is contradicted by the decision on appeal in that case. Slattery v. Arapahoe Tribal Council, 453 F.2d 278 (10th Cir. 1971). This court concludes that 25 U.S.C. § 1302 by implication waived the immunity of Indian tribes from suit and that federal courts have jurisdiction to hear suits against Indian tribes and their officials alleging violations of 25 U.S.C. § 1302. In the instant case, jurisdiction arises under 28 U.S.C. § 1343(4) without regard for jurisdictional amount.

■ Turning to the merits of the action, the complaint is a confusing document, for it fails to set forth separate claims for relief each alleging a violation of a particular statutory provision. Insofar as injunctive relief is sought, however, it is apparent from the complaint and the order to show cause that the action is directed at the Seneca Nation for the purpose of preventing the signing or implementation of an agreement between the Nation and the corporate defendant.

■ Preliminary injunctive relief should be granted only where the applicant carries the burden of showing probable success on the merits and some irreparable injury or, where the showing of probable success is uncertain, that the balance of hardships tips decidedly in his favor. Clairol Inc. v. Gillette Co.,

389 F.2d 264 (2d Cir. 1968); Checker Motors Corp. v. Chrysler Corp., 405 F.2d 319 (2d Cir. 1969).

In this case, only two of the plaintiffs, Lillian Kennedy and Mary Kennedy, have any use rights, or allotments, in Nation lands within the area of the proposed industrial park, and no proceedings have been instituted which would affect any rights which the Kennedys may possess. On these facts, it is unlikely that the Kennedys will succeed in proving a denial of due process of law, for a threat to condemn property is not a taking. *See* Hempstead Warehouse Corp. v. United States, 98 F.Supp. 572, 573 (Ct.Cl.1951). Plaintiffs have pointed to no authority for the proposition that the Seneca Nation lacks the power to acquire use rights of its members in tribal lands, and any questions about public use or just compensation may be raised in the proceedings relating to such acquisition of use rights.

It is also unlikely that plaintiffs will succeed in establishing standing to challenge the disposition of tribal property involved in the instant case. Plaintiffs have pointed to no authority for the proposition that individual Indians have a vested interest in tribal property, and in the absence of such interest or any specific limitation in either the United States or Seneca Constitutions on the exercise of the taxing and spending power, plaintiffs have no standing in this action. *See* Lefthand v. Crow Tribal Council, 329 F.Supp. 728 (D.Mont.1971). *Cf.* Flast v. Cohen, 392 U.S. 83, 101–03, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968).

Finally, plaintiffs have failed to establish that the balance of hardships tips decidedly in their favor in this case. As indicated by the affidavit submitted by the president of the corporate defendant, delay in formalizing and implementing the agreement between the Seneca Nation and the corporation will cause great monetary loss to the Nation as well as to the company, and perhaps even abandonment of the project. In the face of this showing of potential harm to the Nation if an injunction is-

sues and plaintiffs fail to prevail at trial, plaintiffs fail to show how they will be hurt if an injunction is not entered and they prevail at trial. At most, it seems that plaintiffs Lillian Kennedy and Mary Kennedy will have temporarily lost possession of land which is presently unoccupied and undeveloped.

The application for a preliminary injunction is therefore denied.

So ordered.